UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL SUSSMAN,

    Plaintiff,

    v.

UNITED STATES MARSHALL
SERVICE,

    Defendant.

Civil Action No.   03-610 (HHK)

**MEMORANDUM OPINION**

Plaintiff, proceeding pro se, bings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §522, and the Privacy Act, 5 U.S.C. §552a.  This court previously granted defendant's motion for summary judgment on plaintiff's Privacy Act claim and denied summary judgment on his FOIA claim because defendant's search for records was inadequate.  Defendant has filed a renewed motion for summary judgment and plaintiff has filed a cross-motion for summary judgment.  Based on the parties' filings and the applicable law, defendant's motion will be granted and plaintiff's cross-motion denied.

**I. Background**

On July 19, 2002, plaintiff sent a letter to the United States Marshal Service ("USMS"), pursuant to FOIA and the Privacy Act, requesting

> Any and all records relating to me, mention me, or otherwise pertain to me.  The records should include, but not be limited to, documents, files, investigative reports, communications, electronic data, voice mail recordings (or other voice storage files), facsimiles, teletypes, memoranda, briefs, orders, directives, notes, field notes, videos, logs,

>    telephone logs, letters, data files, interoffice memoranda, intraoffice memoranda, interagency communications, requests, etc.

Declaration of Florastine P. Graham ("Graham Decl."), Exhibit ("Ex."), A.[1]  Plaintiff provided the USMS with his identifying data and specified the areas where the documents were most likely to be located.

The USMS processed plaintiff's request by searching for records indexed to his name. *Id.*, ¶ 4.  The USMS located a file which contained a four-page document entitled, "NOTICE OF INVOCATION OF RIGHTS BY INJURED PARTY, MICHAEL SUSSMAN."  *Id.*   Plaintiff had sent this document to the residence of United States District Court Judge Alan Bloch in the Western District of Pennsylvania, and to the office addresses of the Clerk of the United States District Court, the United States Attorney and United States Marshal in that judicial district.  *Id.*  The USMS released this document to plaintiff with one deletion, the address of an individual, citing Exemption 6 of FOIA.  *Id.*, ¶ 5.  The USMS did not locate any other documents responsive to plaintiff's request.  *Id.*, ¶ 4.

On November 7, 2002, plaintiff appealed the USMS's action to the Office of Information and Privacy ("OIP"). *Id.*, ¶ 7.  In his appeal, plaintiff contended the USMS records search was inadequate.  He identified the following as information not disclosed: a "wanted poster" for Keith Maydak, alleging Michael Sussman as an alias; records of Deputy U.S. Marshal Joseph Morehead's inquiries about plaintiff's business affairs to third parties; subpoenas for plaintiff's business records obtained by Deputy Marshal Morehead; and the records received in response to those subpoenas.  *Id.*, Attachment, Nov. 7, 2002 letter.  After plaintiff filed the present action, OIP

---

[1] This declaration is attached to defendant's first motion for summary judgment [Dkt.# 23].

closed its file on plaintiff's administrative appeal. *Id.*, ¶ 8.

Following this Court's August 3, 2004 Order, the USMS searched Keith Maydak's files for records related or pertaining to plaintiff or that mentioned plaintiff by name. Defendant's Motion for Summary Judgment ("Deft's Mot."), Supplemental Declaration of Shaaron L. Keys ("Keys Decl."), ¶ 3. On February 28, 2005, the USMS informed plaintiff that the agency had located approximately 330 pages of documents responsive to his request. *Id.*, Ex. A. Duplicate copies of certain documents were included. *Id.* The USMS also informed plaintiff that ten of the pages had originated with other agencies – the United States Postal Service ("USPS"), the Bureau of Citizenship and Immigration Services ("CIS"), and the Federal Bureau of Investigation ("FBI"). *Id.* The USMS disclosed 81 pages of documents to plaintiff, 80 of them in their entirety and one page withholding the name of a USMS employee pursuant to FOIA Exemption 7 (C). *Id.* The USMS advised plaintiff that it was still processing his request and would contact him again. *Id.*

On March 14, 2005, the USMS informed plaintiff that it had completed the processing of his FOIA request and had located an additional 722 pages of responsive documents. *Id.*, Ex. B. The USMS advised that 123 pages had originated with the Commodities Futures Trading Commission ("CFTC") and the Executive Office for United States Attorneys ("EOUSA") and had been referred to those agencies for disclosure determinations. *Id.* The USMS disclosed 552 pages of documents to plaintiff, 76 pages in their entirety, 476 pages with information withheld pursuant to Exemptions 2, 3, 7(C), 7(D), and 7(E), and the remaining 47 pages withheld in their entirety pursuant to the same exemptions. *Id.* On March 18, 2005, the USMS disclosed to plaintiff an additional one-page document that had been inadvertently withheld. *Id.*, Ex. C.

The agencies that had been referred documents by the USMS provided responses to

plaintiff's FOIA request. On August 30, 2005, the EOUSA released to plaintiff 111 pages in full and 10 pages in part, with information withheld pursuant to Exemption 7(C). Defendant's Opposition to Cross Motion for Summary Judgment and Reply to Plaintiff's Opposition to Summary Judgment ("Deft's Opp."), Declaration of John W. Kornmeier ("Kornmeier Decl."), ¶ 5 & Ex. C. The FBI disclosed its one page document in full. Deft's Opp., Ex. B. On April 18, 2005, the CFTC disclosed in full three pages. *Id.*, Ex. C. On March 17, 2005, the USPS withheld in full seven pages pursuant to Exemptions 6 and 7(C). *Id.*, Ex. D. The CIS released one page in its entirety and withheld no material. *Id.*, Ex. E.

## II. Discussion

*Standard of Review*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)). The mere existence of a factual dispute by itself, however, is not enough to bar summary judgment. The party opposing the motion must show that there is a genuine issue of *material* fact. *See Anderson*, 477 U.S. at 247-48. To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier-of-fact to find in favor of the nonmoving party. *See id.; Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

*Analysis*

<u>Adequacy of Search</u>

To obtain summary judgment of the issue of the adequacy of search, an agency must show "viewing the facts in the light most favorable to the requester, that . . . [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). To meet its burden, the agency may submit affidavits or

declarations that explain in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *Oglesby*, 920 F.2d at 68.

Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)(*citing Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

In processing plaintiff's FOIA request, the USMS searched for records in his name at the offices in the district specified by plaintiff as well as the Investigative Division and the Judicial Security Division at USMS headquarters. Graham Decl., ¶ 4. The search included the Prison/Processing and Population Management/Prisoner Tracking System ("PPM/PTS"), the Inappropriate Communications/Threat Information ("IC/TI") system of records and the Warrant Information Network ("WIN"). *Id.* WIN records are indexed by the names of persons for whom

arrest warrants have been issued and for associates who may provide information, assistance or leads in an USMS investigation. *Id.*, ¶ 10.   The USMS found no records indicating that plaintiff was the subject of an arrest warrant or a fugitive investigation. *Id.*  The WIN file regarding Keith Maydak was not searched because plaintiff did not inform the USMS that plaintiff's name would be in Mr. Maydak's file. *Id.*

In response to this Court's August 3, 2004, the USMS conducted a search of Mr. Maydak's files for records or information regarding plaintiff. Keys Decl., ¶ 3.  The USMS searched for records in the USMS district office's identified in Mr. Maydak's FOIA request. *Id.*, ¶ 4.  The USMS also conducted a search of files located in the USMS' headquarters Investigative Services and Judicial Services Division and the Office of General Counsel. *Id.*

It is plaintiff's burden in a challenge to the adequacy of an agency's search to present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. CIA*, 986 F.2d 547, 560 (2d Cir. 1993); *Weisberg*, 705 F.2d at 1351-52.  Plaintiff has not alleged that defendant's supplemental records search was inadequate and it is apparent from the declaration submitted by the agency representative that the USMS has made a "good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested." *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C. 1996)(citing *Oglesby*, 920 F.2d at 68).  Therefore, defendant's search for plaintiff's requested records was adequate to fulfill defendant's obligations under FOIA.

Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and

practices of an agency." 5 U.S.C. § 552(b)(2). It applies to two categories of material: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *see Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d. 1051, 1073-74 (D.C. Cir. 1981). Generally, courts limit Exemption 2 protection to "trivial administrative matters of no genuine public interest" ("low 2" exempt information), and to information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt information). *Schiller v. NLRB*, 964 F.2d 1205, 1206 (D.C. Cir. 1992); *see Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

Under this exemption, the USMS withheld the location of a Word Perfect file and the information databases utilized by the agency. Keys Decl., ¶ 7. The agency asserts that disclosure of this information would allow fugitives to circumvent investigative procedures and avoid detection and apprehension by the USMS. *Id.* The USMS also withheld information regarding communications between agencies and the guidelines for threat investigations and threat assessments. *Id.*

Plaintiff challenges the agency's withholding of information under this exemption. He contends communications between the USMS and other agencies are "necessarily external" and the information databases utilized by defendant were publicly accessible Internet websites. Plaintiff's Cross-Motion for Summary Judgment and Brief in Opposition to the Defendant's Motion for Summary Judgment ("Pl's Opp."), at 2-3.

To qualify as "high 2" exempt information, the requested document must be

"predominantly internal" and its disclosure "significantly risk[] circumvention of agency regulations or statutes." *Crooker*, 670 F.2d at 1074. Under this category, an agency may withhold documents that would reveal techniques and procedures for law enforcement investigations, guidelines for investigations, or impede the effectiveness of an agency's law enforcement function. *Schiller*, 964 F.2d at 1207. The focus is on whether disclosure will "benefit those attempting to violate the law and avoid detection." *Crooker*, 670 F.2d at 1054.

Defendant reasonably and credibly asserts that disclosure of information about the databases would reveal how the USMS used the databases and conducted the search through those databases. Keys Decl., ¶ 7. In addition, although some of these databases and materials may be publicly available, how the agency uses that information to conduct further investigation is a "predominately internal" matter. Therefore, the Court finds that the information was properly not disclosed to plaintiff.

## Exemption 3

Exemption 3 of FOIA covers records that are "specifically exempted from disclosure by statute . . . provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also Senate of the Commonwealth of Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

Defendant cites this exemption in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure. Rule 6(e) qualifies as statute under this exemption because it was affirmatively enacted by Congress. *Fund for Constitutional Gov't v. National Archives and Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981); *Maydak v. Dep't of Justice*, 254 F.Supp.2d

23, 42 (D.D.C. 2003). Federal Rule of Criminal Procedure 6(e)(2) prohibits disclosure of matters occurring before a grand jury. *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 498-501 (D.C. Cir. 1998). FOIA Exemption 3 permits the withholding of materials that, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or directions of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir.)(*en banc*), *cert. denied*, 449 U.S. 993 (1980). Defendant withheld material that is being reviewed in an ongoing federal grand jury investigation into the activities of plaintiff's associates. Keys Decl., ¶ 8. The Court finds that disclosure of these materials would violate Rule 6(e) of the Federal Rules of Criminal Procedure. The documents were properly withheld under Exemption 3.[2]

### Exemption 5

FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5). The exemption allows an agency to withhold materials that would be privileged from discovery in civil litigation. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). The exemption encompasses the

---

[2] Defendant also cites Exemption 7(A) as a basis for withholding the grand jury information. *See* Keys Decl., ¶ 10. That exemption shields from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records could ... interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). For the exemption to apply, the agency is only required to show that disclosure of records would interfere with a "concrete prospective law enforcement proceeding." *Carson v. United States Dep't of Justice*, 631 F.2d 1008, 1018 (D.C. Cir. 1980). Exemption 7(A) is properly applied to criminal investigative files of an ongoing criminal investigation. *Delviscovo v. FBI*, 903 F.Supp. 1, 3 (D.D.C. 1995).

deliberative process privilege.  *Id.*   That privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

The documents defendant withheld under this exemption concerned the deliberative process used by the USMS in threat investigations. Keys Decl., ¶ 9. These documents contain communications regarding the determination of the existence of an actual or potential threat, the extent of the threat, and the likelihood of the threat being carried out against an individual under the protection of the USMS.  *Id.*   According to the USMS, disclosure of this information would reveal the thought processes and preliminary opinions of data analysts conducting threat assessments and would adversely affect the candid discussions of these opinions.  *Id.*

The Court finds that the documents withheld by the USMS fall within the ambit of the deliberative process privilege.   The decision not to disclose this material, therefore, was proper.

Exemption 7(C)

Exemption 7(C) of FOIA exempts from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C).  In determining whether these exemptions apply to particular material, the Court must balance the interest in privacy of the individual mentioned in the record against the public's interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  It is the "interest of the general public, and not that of the private litigant" that the court considers in this analysis.  *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981)

11

(citing *Ditlow v. Shultz*, 517 F.2d 166, 171-72 (D.C. Cir.1975)).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282  (quoting  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Servs., Inc.,* 926 F.2d at 1205.

The USMS invokes Exemption 7(C) to protect  the names, telephone numbers, and other personal information regarding law enforcement officers and other government employees, the name and information of a judge protected by the USMS and threatened by Mr. Maydak, and the names, social  security numbers and other personal information pertaining to third parties.  *See* Keys Decl., ¶ 11.  The deletion of the names and identifying information of federal, state and local law enforcement personnel has been routinely upheld by the courts.  *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003); *see also Lesar v. United States Dep't of Justice*, 636 F.2d  472, 487 (D.C. Cir. 1980)(finding legitimate interest in preserving identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F.Supp. 1, 3 (D.D.C. 1995)(possibility of animosity toward  FBI agents outweighed any possible benefit of disclosure), *aff'd in relevant part,* 1996 WL 734142 (D.C. Cir. Nov. 20, 1996). In addition, the names and identities of individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files have been consistently protected from disclosure.  *See Perrone v. FBI*, 908 F.Supp. 24, 26 (D.D.C. 1995) (citing *Reporters Committee for Freedom of the Press*, 489 U.S. at

779); *Baez v. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980); *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C. 1987). With respect to a cooperating witness, "'[e]xemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C.Cir.1990)) (other citation and internal quotation marks omitted); *see also Computer Professionals for Social Responsibility v. United States Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir.1996) ("records contain[ing] the names of informants, witnesses, and potential suspects who are relevant to its criminal investigation . . . clearly fall within the scope of Exemption 7(C)").

Once a privacy interest is identified under Exemption 7 (C), the FOIA records requestor must establish that (1) the public interest is a significant one; and (2) the information is likely to advance that interest. *Favish*, 541 U.S. at 172. When alleged government impropriety is at issue, the requestor must provide evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred. *Id.* at 174. The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Services,* 926 F.2d at 1205.

Plaintiff alleges that there is a public interest in disclosure of information about the alleged threat may by Mr. Maydak to a federal judge because Mr. Maydak is a " public figure." Pl' s Opp., p. 7. Disclosure of the withheld materials, plaintiff contends, " will shed light on the dispute about whether a real threat existed." *Id.*

"[T]he only public interest relevant for purposes of Exemption 7 (C) is one that focuses

13

on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7 (C). *Blanton v. U.S. Dep't of Justice*, 63 F.Supp.2d 35, 45 (D.D.C. 1999)(quoting *Davis v. Dep't of Justice*, 968 F.2d at 1282). In the absence of any compelling evidence that the government agency has engaged in illegal activity, this type of information is exempt from disclosure. *See SPARC v. United States Postal Service*, 147 F.3d 992, 999 (D.C.Cir. 1998); *Vance v. FBI*, 46 F.Supp.2d 26, 33 (D.D.C. 1999).

Since Plaintiff does not allege that the USMS engaged in misconduct, there is no public interest in disclosure that outweighs the privacy interests of law enforcement officials, government employees, the federal judge, and third parties. Defendant properly withheld the records under Exemption 7 (C).

### Exemption 7(D)

Exemption 7(D) of FOIA protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).

To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances

support an inference of confidentiality.  *See U. S. Dep't of Justice v. Landano*, 508 U.S. 165, 179-81 (1993). When determining the latter, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." *Id*. at 172.  The government is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential sources.  An implied grant of confidentiality may be inferred, however, from the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target.  *See id*; *see also Computer Professionals for Social Responsibility*, 72 F.3d at 905-06.

Defendant asserts this exemption to protect the identity of confidential sources who had an express grant of confidentiality.  *See* Keys Decl., ¶ 13.  The confidential sources who cooperated with the USMS's investigation feared that disclosure of their identities would endanger their lives.  *Id*.  The names of confidential sources and the information they provided to law enforcement were thus properly withheld under Exemption 7(D).

Exemption 7(E)

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. §552(b)(7)(E).  Thus, for information to be properly withheld under this exemption, a court must find that (1)  the information was compiled for law enforcement purposes; and (2) release of the information could reasonably be expected to circumvent the law.  *FBI v. Abramson*, 456 U.S. 615, 622 (1982); *Edmonds*, 272 F.Supp.2d at 56.

Under this exemption, the USMS withheld information regarding its administrative and operational guidelines and procedures utilized in investigation threats against federal court employees. *See* Keys Decl., ¶ 14. The agency asserts that disclosure of this information would allow the general public to determine the specific investigative guidelines and procedures applied in a specific case, such as the one at issue here, and would allow threatening individuals to circumvent the law and avoid detection. *Id.*, ¶¶ 15-16.

The agency's declaration clearly sets out the type of documents involved and how disclosure of these techniques and practices could create a risk of circumvention of the law. The Court, therefore, concludes that the records were properly withheld under Exemption 7(E).

Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The USMS withheld investigative reports and records from the agency's Warrant Information Network under this exemption. *See* Keys Decl., ¶ 17. The agency asserts that disclosure of the information would endanger the life and physical safety of a judge protected by the USMS, law enforcement officials, and members of the public. *Id.*

The investigation at issue here is a physical threat to the life of a federal judge. By its very nature, then, disclosure of information from the law enforcement files has the reasonable potential to endanger the life or safety of individuals. The records were properly withheld.

Referrals to Other Agencies

While USMS was processing plaintiff's FOIA request, the agency discovered documents originating from other federal government agencies. Keys Decl., ¶¶ 5-6. The USMS referred

these documents to each appropriate agency for a determination of whether the records should be released under FOIA. *Id.* The documents were referred to the following agencies: the United States Postal Service, the Bureau of Citizenship and Immigration Services, the FBI, the Commodity Futures Trading Commission, and the EOUSA. *Id.*

In situations such as this, the Court must determine if the referral was justified or whether the referral resulted in the improper withholding of documents. *Peralta v. United States Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998); *Maydak*, 254 F.Supp.2d at 40. An agency possessing records that originated with another agency is ultimately responsible for processing the records. *McGhee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983); *Maydak*, 254 F.Supp.2d at 40. However, the agency may refer the records to the originating agency for "consultation" as to whether certain exemptions apply. *McGhee*, 697 F.2d at 1110 n. 71; *see also* 5 U.S.C. § 552(a)(6)(B)(iii).

The USMS referred documents to the EOUSA, the FBI, the CTFC, the USPS, and the CIS. The FBI, CTFC and CIS disclosed all responsive documents to plaintiff and did not withhold any records. *See* Deft's Opp., Exs. B, C, E. On August 30, 2005, the EOUSA released to plaintiff 110 pages in full and 10 pages in part. *Id.*, Ex. A, Declaration of John W. Kornmeier ("Kornmeier Decl."), ¶ 5. The EOUSA asserted Exemption 7(C) as a basis for withholding certain records. *Id.*, ¶¶ 7-11. The agency withheld the identities and personal information about third-party individuals, and the identities of federal agents and government investigation and prosecution of plaintiff and Mr. Maydak. *Id.* For the same reasons stated above for the withholding under this

exemption by the USMS, the Court finds that the EOUSA properly withheld the records.[3]

The remaining issue is the disposition of the seven pages of documents referred to the United States Postal Service by the USMS. On March 17, 2005, the USPS informed plaintiff that it was withholding the records pursuant to Exemption 6 and 7 (C) because disclosure of the information would constitute an invasion of personal privacy. Deft's Opp., Ex. D. Plaintiff has not appealed this decision and has not otherwise argued that the withholding by the USPS was improper. Therefore, the Court will uphold the USPS's decision.[4]

### Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b). A Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n. 4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

---

[3] Plaintiff contends that the USMS redacted records prior to referring them to the other agencies and has not provided a rationale for withholding the information. *See* Pl's Reply, p. 2. The USMS referred five pages of documents to the other agencies. *See* Kornmeier Decl., ¶ 5 n.1. These five pages were USMS Form 11, Reports of Investigations. *Id.* As the Court stated above, these forms were properly withheld under Exemption 7(F).

[4] Plaintiff contends that summary judgment should not be granted because the USMS has not asserted any exemptions under the Privacy Act. *See* Pl's Opp., p. 10. Plaintiff's argument is without merit because the Court granted summary judgment on the Privacy Act claim in its August 3, 2004 order.

Having reviewed the declarations of the USMS and the EOUSA, the Court concludes that defendant has withheld only the records or portions of records exempt under FOIA's provisions, and that all reasonably segregable material has been released. *See* Keys Decl., ¶¶ 18-19, 21; Kornmeier Decl., ¶ 10 & Ex. D. With respect to these records, the agency declarations and attachments adequately specify "in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn*, 484 F.2d at 827.

*Conclusion*

Based on the foregoing, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. A separate order accompanies this Memorandum Opinion.

HENRY H. KENNEDY, JR.<br>
United States District Court

DATE: October 13, 2005