UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL SUSSMAN,<br><br>            Plaintiff,<br><br>  v.<br><br>UNITED STATES MARSHALS<br>SERVICE,<br><br>            Defendant. | Civil Action 03-610 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Michael Sussman, proceeding *pro se*, brings this action against the United States Marshals Service ("USMS" or "Agency") alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. The case arises from Sussman's request from the USMS for records pertaining to himself as well as his complaints about improper disclosure of information about him to third parties. Before the Court is the USMS's second renewed motion for summary judgment [#93]. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted in part and denied in part.

**I. BACKGROUND**

Sussman first filed this action in March 2003. The Court resolved some portions of the case in August 2004. *See Sussman v. U.S. Marshals Serv.*, slip op. (D.D.C. Aug. 3, 2004). In October 2005, it granted summary judgment as to all remaining claims in favor of the Agency. *See Sussman v. U.S. Marshals Serv.*, 2005 WL 3213912 (D.D.C. Oct. 13, 2005). Sussman appealed, and in July 2007, the Court of Appeals for the District of Columbia Circuit affirmed

part of this Court's decision and vacated and remanded the remainder for further proceedings. *See Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1124 (D.C. Cir. 2007). In September 2009, this Court denied cross-motions for summary judgment. *See Sussman v. U.S. Marshals Serv.*, Slip Op. (D.D.C. September 25, 2009). These opinions lay out the history of the case, which the Court will not repeat in detail here. In short, Sussman seeks, pursuant to FOIA and the Privacy Act, records in the USMS's possession relating to or referencing himself. The Agency has documents pertaining to Sussman because the USMS conducted a threat investigation of him after he sent a letter to the home of a federal judge. In addition, some materials responsive to Sussman's request appear in Agency records regarding an individual named Keith Maydak, who was a business associate of Sussman's and who may have used Sussman's name as an alias. Sussman also brings claims for violation of the Privacy Act's prohibition on the Agency's disclosing information about Sussman to third parties.

After remand from the D.C. Circuit and a narrowing of issues by the parties, the following causes of action remain: portions of Count I, which seeks disclosure of records pursuant to FOIA; Count II, which seeks disclosure of records under the Privacy Act; Count III, which seeks damages under the Privacy Act for failure to keep an accurate accounting of disclosures of information about Sussman by the USMS; and Count VII, which seeks damages under the Privacy Act based on alleged unlawful disclosures of information regarding Sussman by the Agency. The USMS moves for summary judgment as to all of these remaining issues.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a FOIA action challenging an agency's invocation of exemptions to its disclosure obligation, the agency must justify its reliance on those exemptions through the submission to the court of a so-called "*Vaughn* index," affidavits or declarations, or both. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009); *see also Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir 1973).[1] The Court may award summary judgment solely on the information provided in such affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

Here, the USMS has submitted with its second renewed motion for summary judgment the Fourth Supplemental Declaration of William E. Bordley, Associate General Counsel and Freedom of Information/Privacy Act Officer of the USMS ("Fourth Bordley Decl."), and an accompanying *Vaughn* Index. To address withholdings from an additional six pages of records

---

[1] A *Vaughn* index "must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Executive Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002). "[T]he precise form of the agency's submission—whether it be an index, a detailed declaration, or a narrative—is immaterial." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 34 (D.D.C. 2007) (citing *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994)).

disclosed after its motion was filed, the Agency has submitted the Fifth Supplemental Declaration of Bordley ("Fifth Bordley Decl.") and an accompanying *Vaughn* Index. Finally, it provided a Sixth Supplemental Declaration of Bordley ("Sixth Bordley Decl.") to address questions raised by the Court for purposes of clarification.

### III. ANALYSIS

**A.    FOIA Exemptions**

Since the D.C. Circuit issued its opinion in this case, the parties have conferred and substantially narrowed their dispute as to the FOIA disclosures. At issue now are (1) thirty-seven specific segments of redacted information that appear on twenty-three pages that were released in part to Sussman and (2) additional redactions on six pages newly released to Sussman in the course of briefing the USMS's current motion. As to the set of twenty-three pages, Sussman places the redactions he disputes into three categories (A, B, and C) based on the FOIA exemptions on which the USMS relies to justify the withholding, and he has marked each individual redaction with a number by category (*i.e.*, A-1 through A-15, B-1 through B-3, and C-1 through C-19).[2] In compliance with an order of the Court, the Agency has submitted unredacted versions of the twenty-three pages as well as the additional six pages for the Court's *in camera* review.

---

[2] Sussman has helpfully included copies of the relevant documents labeled with these numbers as Exhibit 1 to his opposition to the USMS's motion for summary judgment. The Court will refer to the redactions by these numbers and will also indicate, using the USMS's Bates-stamped numbers, on which pages the redactions appear.

4

The USMS moves for summary judgment as to Count I, arguing that all of the redactions Sussman challenges are proper under FOIA. The Court agrees except as to the USMS's failure to disclose certain segregable portions of text, described below.

1.  **Redactions A-1 through A-15**

Sussman challenges fifteen redactions, which he has labeled A-1 through A-15, as to which the USMS has invoked exemption 7(C), which permits the withholding of information compiled for law enforcement purposes if the release of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The exemption "protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants." *Sussman*, 494 F.3d at 1115 (citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)). Sussman accepts that the Agency may redact names and other identifying information from the documents released to him. He argues, however, that these fifteen particular redactions withhold such "large swaths of information" that they cannot truly include only identifying information.

As to redactions A-1, A-2, and A-3,[3] the USMS has invoked both exemption 7(C) and exemption 7(F). Exemption 7(F) permits the withholding of information "compiled for law enforcement purposes" if that information "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The *Vaughn* index indicates that in addition to names and identifying information, these redactions removed "information provided by a third-party individual that could pose a potential threat to a judge." Fourth Bordley Decl., Attach. 1 (*Vaughn* Index) at 8, 9, 10. Sussman does not challenge the USMS's reliance on

---

[3] These redactions appear on pages Bates-stamped 93, 97, and 101.

exemption 7(F), and the Court's *in camera* review satisfies it that the exemption is properly invoked here. Accordingly, whether exemption 7(C) also justifies these three redactions in full is irrelevant.

As to the remaining 12 redactions in category A, the Court's *in camera* review confirms that each contains names or other information from which an individual could be identified. In particular, several of the redactions—including the longer blocks of text Sussman has marked A-4, A-10, and A-11[4]—describe investigators' conversations with individuals who provided information to them. The USMS has properly withheld information about the location of those meetings and the substance of the interviews, which are sufficiently specific that they could reveal the identities of the interviewees. The Court addresses below, in the section of this memorandum opinion regarding segregability, the question of whether some non-exempt portions of the redacted text must be disclosed.

### 2. Redactions B-1 through B-3

Sussman objects to three redactions as to which the USMS has relied on exemptions 2 and 7(E). Exemption 2 allows an agency to withhold information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The D.C. Circuit has explained that the "high 2" exemption, as distinct from the "low 2" exemption on which the USMS does not rely, requires a two step inquiry: "First, the information withheld must fall within the exemption's language. . . . Second, if this threshold step is satisfied, the agency can defeat disclosure by demonstrating that release of the material would significantly risk circumvention of federal regulations or statutes." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842,

---

[4] These redactions appear on pages Bates-stamped 103, 123, and 145.

847 (D.C. Cir. 2010) (citations omitted). Exemption 7(E) excepts from disclosure information compiled for law enforcement purposes if it "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The USMS asserts that redactions B-1, B-2, and B-3[5] are proper because disclosure of the withheld information "could allow persons investigated to determine investigative methods and/or sources of information, and thereby permit circumvention of the law." *Vaughn* Index at 1; *see also* Fourth Bordley Decl. ¶ 4. It further argues that the approval by this Court and the D.C. Circuit of its withholding of "names of external and federal agency websites and databases used in its investigations" should control. Def.'s 2d Renewed Mot. for Summ. J. ("Def.'s Mot.") at 8.

Although the vague explanation the USMS now provides would not by itself be sufficient to support its position and although the D.C. Circuit's opinion addressed only websites, not databases, *see Sussman*, 494 F.3d at 1112, the Court concludes that the USMS is entitled to summary judgment as to this issue. This Court ruled in its 2005 opinion in this case that the Agency's explanation for the redaction of names of databases—that their disclosure would reveal how the USMS uses databases and conducts investigations, thereby allowing fugitives to circumvent investigative procedures—was sufficient to justify withholdings pursuant to exemption 2. *Sussman*, 2005 WL 3213912, at *5 (citing Supp. Decl. of Shaaron L. Keys ¶ 7).[5] The Court's *in camera* review of the relevant pages reveals that no more than the names of

---

[5] These redactions appear on pages Bates-stamped 7 and 8.

[5] The D.C. Circuit did not comment on this holding.

databases is withheld by the redactions to which Sussman objects. Accordingly, the Court will grant summary judgment to the USMS as to these redactions.

   3.   **Redactions C-1 through C-19**

The USMS relies for each redaction in Sussman's third category on exemptions 2, 5, and 7(E). Exemptions 2 and 7(E) are described above. Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).[6]

Sussman argues that exemption 5 does not apply to these redactions because the withheld information appears to be the application of, rather than deliberation about, policy decisions. He also objects to the USMS's reliance on exemptions 2 and 7(E) because the Agency did not make clear to which portions of the redactions those exemptions apply. The Court is unconvinced that exemption 5 applies to the redactions at issue but concludes that summary judgment for the USMS is nevertheless proper because the withholdings are justified by exemption 7(E).[7]

Redactions C-1 and C-2[8] withhold general information about the methods by which the USMS conducts threat assessments. The USMS asserts that "disclosure of these guidelines and

---

[6] Here, the USMS asserts that some materials are subject to this exemption on the basis of the protection of the deliberative process privilege. *See Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002) (explaining that exemption 5 encompasses, *inter alia*, the deliberative process privilege). The deliberative process privilege "protects 'confidential intra-agency advisory opinions' and 'materials reflecting deliberative or policy-making processes.'" *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (quoting *EPA v. Mink*, 410 U.S. 73, 86 (1973)).

[7] The Court need not reach the question of whether the USMS has also properly invoked exemption 2.

[8] These redactions appear on pages Bates-stamped 33 and 34.

procedures would allow other threatening parties to bypass specific investigative channels and would ultimately allow such threateners to circumvent the law and evade detection and develop countermeasures to USMS protective arrangements." Fourth Bordley Decl. ¶ 14. This assertion justifies reliance on exemption 7(E), which permits withholding of information which "would disclose technique and procedures for law enforcement investigations or . . . guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E), with "reasonably specific detail" and is "not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project*, 656 F.2d at 738. The Court therefore concludes that the redactions are proper.

Redactions C-3 through C-19[9] withhold information that reveals how the USMS's threat assessment procedures were applied to Sussman. The Court accepts the assertions in the Agency's declaration that disclosing the use of these internal procedures would allow others to circumvent them. Fourth Bordley Decl. ¶ 14; *see also Schlesinger v. CIA*, 591 F. Supp. 60, 64 (D.D.C. 1984) (holding that where agency declarations in support of the invocation of exemptions are reasonably detailed and in the absence of evidence that they are untrue or made in bad faith, "the court need not question [the submissions'] veracity and must accord them substantial weight in its decision" (citing *Taylor v. Dep't of the Army*, 684 F.2d 99, 106-07 (D.C. Cir. 1982))). Accordingly, these redactions too are proper under exemption 7(E).

---

[9] These redactions appear on pages Bates-stamped 56, 59, 88, 89, 90, 93, 97, 101, 102, 160, 161.

4. **Additional six pages**

The six pages the USMS most recently disclosed to Sussman are heavily redacted,[10] but the Court concludes that each redaction is appropriate under FOIA.

On the first three of these pages,[11] the USMS relies on exemptions 2, 5, and 7(E) to justify the redaction of several large blocks of text. Upon *in camera* review of the documents, the Court concludes that this text is properly redacted. The withheld material is quite similar to that in Sussman's category C; it describes in general how the USMS assesses threats and in particular how it conducted its investigation and assessment of Sussman. The Court relies on the statement in the Fourth Bordley Declaration that revealing these methods and their application would allow others to circumvent future USMS investigations of unlawful activity. Fourth Bordley Decl. ¶ 14. The additional, smaller redactions for which the USMS has invoked 7(C) cover only names of individuals and are therefore also justified.

The remaining three pages also contain significant redactions.[12] A website address is withheld from the top right corner of each page pursuant to exemption 2; as noted, the D.C. Circuit has approved such redactions, *Sussman*, 494 F.3d at 1112, and therefore the Court concludes that they are appropriate. The USMS relies on exemption 7(C) as the basis for the

---

[10] Sussman has not directly objected to the redactions on these six pages. At the time he filed his opposition to the motion for summary judgment currently before the Court, the USMS still withheld these pages in their entirety, so he did not have the requisite information to do so. Based on a representation in the Sixth Bordley Declaration that Sussman contests the redactions in the six pages, the Court will consider their propriety.

[11] These pages are Bates-stamped 154, 155, and 156.

[12] These pages are Bates-stamped 157, 158, and 159.

remaining redactions. Because the Court's *in camera* review reveals that each withholds the name, social security number, or address of an individual, these redactions are also proper.

Accordingly, the USMS is entitled to summary judgment as to these six pages of records.

**5.    Segregability**

Where FOIA exemptions apply, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  A district court must always "make specific findings of segregability regarding the documents to be withheld." *Sussman*, 494 F.3d at 1116 (citing *Summers v. Dep't of Justice*, 140 F.3d 1077, 1081 (D.C. Cir. 1998); *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993)).  Accordingly, the Court will now address whether any redacted information is reasonably segregable from that to which an exemption applies.  The Court is mindful in conducting this analysis that "FOIA mandates disclosure of information, not solely disclosure of helpful information," *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008), although "a court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content," *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977).

**i.    Category A**

The Court concludes that several redactions in Sussman's category A withhold some material that is segregable from the exempt information.  To explain this conclusion, the Court refers to the page Bates-stamped 113, on which the redactions Sussman has marked A-7, A-8, and A-9 appear.  On the second paragraph of that page, the USMS redacted names and other

11

identifying information but did not withhold phrases around such information, such as the date on which an event occurred and that someone "attempted to contact" someone else "by telephone." Pl.'s Opp'n to Def.'s Mot., Ex. 1 at 5. In other words, this paragraph discloses information related to but not part of the information subject to an exemption. The Court concludes from reviewing *in camera* unredacted versions of the documents that the redactions Sussman has marked A-4, A-5, A-8, A-10, A-11, A-12, and A-14[13] could have been similarly treated. Therefore, the Court cannot hold that all reasonably segregable information from these pages has been disclosed to Sussman.

### ii. Category B

The Court next turns to Sussman's category B. Because the information withheld is in its entirety the names of databases, the Court finds that no redacted information is segregable.

### iii. Category C

With regard to Sussman's category C, most redactions are in their entirety the descriptions or application of internal procedures protected by exemption 7(E). In redaction C-9, however, the USMS has—perhaps inadvertently—redacted Sussman's own name and address. Identical information is not redacted just above the redactions Sussman has labeled C-4 and C-5. The Court finds that this information is segregable from the properly redacted text below and next to it, so the USMS must disclose it to Sussman.

---

[13] These redactions appear on pages Bates-stamped 103, 104, 113, 123, 145, 148, and 151.

### iv. Six additional pages

Finally, the Court finds that none of the text redacted from the additional six pages most recently disclosed to Sussman is reasonably segregable from that which is exempted from FOIA's requirements. The text on the first three pages, other than that which the USMS has already disclosed, is in its entirety the material to which exemption 7(E) applies. Similarly, the text redacted from the final three pages contains nothing other than the identifying information and website addresses that fall under exemptions 7(C) and 2, respectively.

### B. Privacy Act Claims

The D.C. Circuit remanded three of Sussman's claims—Counts II, III, and VII—under the Privacy Act. The USMS now renews its request for summary judgment as to each.

#### 1. Count II

Count II of Sussman's complaint seeks disclosure of records pursuant to the Privacy Act, which mandates disclosure of records "pertaining to" a person to that person upon request. 5 U.S.C. § 552a(d)(1). The D.C. Circuit interpreted this provision to require that the relevant agency "give parties access only to their own records, not to all information pertaining to them that happens to be contained in a system of records." *Sussman*, 494 F.3d at 1121. Accordingly, "the Marshals Service must disclose to Sussman those materials—and only those materials—contained in records about him, the release of which would not violate 5 U.S.C. § 552a(b)." *Id.* Because this Court had not made a finding as to whose records contained the information Sussman sought, the Court of Appeals remanded this claim. *Id.*

The USMS has now provided to the Court the information necessary to resolve this issue. In the declaration submitted with its current motion, the Agency explains that it searched for

records pertaining to Sussman in its Inappropriate Communications/Threat Information System ("IC/TIS"), the only one of its three systems of records in which documents were indexed to Sussman's name and/or personal identification number. Fourth Bordley Decl. ¶¶ 23-24, 33; *see also id.* ¶ 33 ("Other than the IC/TIS investigation of [Sussman], the USMS did not maintain an investigation file pertaining to [Sussman]."). The Court therefore finds that USMS has provided to Sussman all records obtained by searching for records about Sussman.[14]

Sussman's arguments to the contrary are unpersuasive. First, he suggests that because the USMS denied it had any records of an investigation of him when it first responded to his request, it cannot be trusted now. The USMS has explained that pursuant to FOIA exemption (c)(1), it denied the existence of the investigation while it was ongoing but, now that the investigation is complete, the Agency has disclosed the related records. *Id.* ¶ 25. Exemption (c)(1) provides:

> Whenever a request is made which involves access to records [compiled for law enforcement purposes] and— (A) the investigation or proceeding involves a possible violation of criminal law; and (B) there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings, the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.

---

[14] The Agency also searched for all references to Sussman and companies with which Sussman was affiliated in records pertaining to Maydak. Fourth Bordley Decl. ¶¶ 27, 33-34. This search was necessary to comply with the Agency's obligations under FOIA, but because the records are about Maydak, not Sussman, it was not necessary to comply with the Privacy Act.

14

5 U.S.C. § 522(c)(1). It is not now before the Court whether the invocation of exemption (c)(1) at the time of Sussman's initial request was proper, but it is sufficiently plausible that it was that the Court finds no evidence of bad faith on the part of the Agency.[15]

Second, Sussman contends that records pertaining to him might be located in the records regarding Maydak because the USMS for a time believed the two men were the same person. But the declaration from the USMS states only that a wanted poster listed "Michael Sussman" as an alias Maydak used, not that the USMS confused their identities. *Id.* ¶ 33. According to the Agency, the records about Maydak demonstrate that the USMS learned that Sussman was an associate of Maydak's. *Id.* ¶ 33. Furthermore, the USMS opened a separate investigation into Sussman, making clear they were aware that he was a different person than Maydak. The Court is therefore satisfied that Sussman received the records about Sussman.

Third, Sussman argues that some of the records about him that the Agency disclosed are from the Agency's Warrant Information Network ("WIN"), demonstrating that the USMS's assertion that it only maintains records about him in the IC/TIS is untruthful. Unfortunately, the USMS's explanation as to this argument is less than clear, so the Court is not certain why two pages of records refer to Sussman's "WIN ID" number, *see* disclosed pages Bates-stamped 33, 34, or what it means that "[t]he electronic indices to records in the IC/TIS are maintained in the Warrant [I]nformation Network," Fourth Bordley Decl. ¶¶ 23. But the USMS has indicated that it conducted a threat investigation, not a fugitive investigation, of Sussman, Fourth Bordley Decl. ¶¶ 25, 33, and the Court accepts the apparent contention that the assignment of a WIN number to

---

[15] For this reason, the Court also rejects Sussman's fourth argument, that the Court should deny summary judgment as to this count because the USMS has not specified which pages of disclosed records were those the USMS initially found but did not admit to having.

15

an individual under investigation based on a threat does not mean additional records exist outside the IC/TIS. The Court will therefore not credit Sussman's suggestion that the USMS holds additional documents pertaining to him that it failed to disclose.

For the reasons explained, the USMS is entitled to summary judgment as to Count II.

**2.     Count III**

The D.C. Circuit remanded for further proceedings as to Count III because, although the USMS requested summary judgment as to that claim, the Agency had made no argument explaining, nor did its affidavits address, why it was entitled to such relief. *Sussman*, 494 F.3d at 1124. Count III seeks damages for failure by the USMS to adequately record disclosures it made to Sussman's associates and others during its investigation of Sussman. The Circuit Court explained that "[t]he core elements of the claim are (1) failure by the Marshals Service to maintain an accurate accounting of disclosures, and (2) a resultant adverse effect on Sussman." *Id.* (citing 5 U.S.C. § 552a(c)(1), (g)(1)(D)).

The Agency has again failed to make arguments related to this issue.[16] Accordingly, the Court will not grant its request for summary judgment as to Count III.

---

[16]     The Agency's declaration contains some information relevant to Sussman's claim. Specifically, it explains that the USMS uses a particular form to record disclosures from a system of records and may also reference disclosures "in the electronic record or in information maintained in the paper records." Fourth Bordley Decl. ¶ 35. It also indicates that the Agency did not locate any accounting of any disclosure in the electronic or paper records in the IC/TIS. *Id.* Furthermore, "the USMS is unaware of any disclosure such as those described by [Sussman]" in his complaint, *id.*, which alleges that "[d]uring the course of [interviews conducted as part of the investigation of Sussman], agents of the USMS made disclsoures to the associates, and to other persons." Am. Compl. ¶ 25. Nevertheless, the Court will not determine in the absence of any argument from the parties about these assertions whether the process described is sufficient to assure accurate accounting of disclosures.

### 3. Count VII

The D.C. Circuit also vacated this Court's grant of summary judgment to the USMS as to Count VII, which alleges, under 5 U.S.C. § 552a(g)(1)(D), failure to comply with the Privacy Act. First, the Court of Appeals held that because as to this count, Sussman had alleged facts that might support a finding that "the agency acted in a manner which was intentional or willful" in failing to comply with the Privacy Act, *id.* at 1122 (quoting 5 U.S.C. § 552a(g)(4)) (internal quotation marks omitted), Sussman might be entitled to damages. Specifically, Sussman had alleged that USMS agents improperly disclosed information to customers of "a business location of Sussman's" called Chrissy's News by "yelling and screaming their allegations and theories in an effort to intimidate." Am. Compl. ¶¶ 84, 99; *see also Sussman*, 494 F.3d at 1122 (quoting Am. Compl. ¶ 99). This information allegedly regarded "Sussman's financial transactions, employment history, business transactions, and other information from [the USMS's] files." Am. Compl. ¶ 84.

Next, the D.C. Circuit held that the USMS could be liable only if the information disclosed was located in records retrievable by Sussman's name, so "for his action to survive, Sussman must present evidence that materials from records *about him*, which the Marshals Service retrieved by *his name*, were improperly disclosed." *Id.* The USMS has made no argument as to whether Sussman has met this burden, nor do its declarations speak to the issue. Accordingly, the Court cannot grant its request for summary judgment as to Count VII.[17]

---

[17] Similarly, Sussman has made no argument regarding Count VII, but he did submit to the Court an affidavit by his attorney stating that the USMS "has never put forth specific factual information about 1) what transpired at [Chrissy's News] and 2) what information was allegedly disclosed" and seeking discovery as to those issues under Federal Rule of Civil Procedure 56(f). Pl.'s Opp'n to Def.'s Mot., Aff. of Sean J. Hartigan Pursuant to Fed. R. Civ. P.

## IV. CONCLUSION

For the foregoing reasons, it is this 1st day of September 2010, hereby

**ORDERED** that the USMS's motion for summary judgment [#93] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that by no later than September 24, 2010, the parties shall submit a joint proposed case management plan and briefing schedule to govern the future proceedings in this case; and it is further

**ORDERED** that if the parties are unable to agree on a proposed case management plan and briefing schedule each party shall submit its own proposed plan and schedule by September 24, 2010.

Henry H. Kennedy, Jr.<br>
United States District Judge

---

56(f) ¶¶ 12-13. Insofar as this affidavit is a motion to hold the request for summary judgment as to Count VII in abeyance pending discovery pursuant to Rule 56(f), the Court denies it as moot because the relevant request for summary judgment is denied.