**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MICHAEL SUSSMAN,** |
| **Plaintiff,** |
| **v.** |
| **UNITED STATES MARSHALS SERVICE,** |
| **Defendant.** |

**Civil Case No. 03-610 (HHK)**

**MEMORANDUM OPINION**

**I.    Introduction.**

Plaintiff, Michael Sussman, brings this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, against Defendant, the United States Marshals Service (USMS), alleging that Defendant violated the FOIA by improperly withholding requested records about Plaintiff and that Defendant violated the Privacy Act by making improper disclosures of records about Plaintiff to third parties without proper accounting.  The Court has summarily adjudicated most of these claims in favor of Defendant in decisions on earlier motions for summary judgment; all that remain are part of Count I—the FOIA claim— and Counts III and VII—the Privacy Act claims.  Presently before the Court are Defendant's motion for summary judgment on all remaining counts and Plaintiff's cross-motion for partial summary judgment on Count III.  Defendant's motion will be granted in part as to Counts I and III but will be denied in part as to Count VII.  Plaintiff's cross-motion will be denied.

II.     **Background.**

In his amended complaint, Plaintiff alleges 16 counts of FOIA and Privacy Act violations.  *See* 1st Am. Compl., ECF No. 7.  In August 2004, the Court summarily adjudicated Counts IV through XVI in favor of Defendant in August 2004.  *See* Mem. Op., ECF No. 33.  In October 2005, the Court summarily adjudicated all remaining claims also in favor of Defendant. *See Sussman v. USMS*, No. 03-cv-610, 2005 WL 3213912 (D.D.C. Oct. 13, 2005).  Plaintiff appealed those decisions and in July 2007, the Court of Appeals for the District of Columbia Circuit affirmed part of this Court's decision and vacated and remanded the remainder for further proceedings.  *See Sussman v. USMS*, 494 F.3d 1106, 1124 (D.C. Cir. 2007).  In September 2009, the Court denied cross-motions for summary judgment.  *See Sussman v. USMS*, No. 03-cv-610, 657 F. Supp. 2d 25 (D.D.C. 2009).  Most recently, in September 2010, the Court granted in part and denied in part another of Defendant's motions for summary judgment.  *See Sussman v. USMS*, 734 F. Supp. 2d 138 (D.D.C. 2010).

Those opinions lay out the history of this case, which the Court will not belabor here. Suffice it to say that Plaintiff seeks, pursuant to FOIA and the Privacy Act, records in Defendant's possession relating to or referencing himself.  Defendant has documents pertaining to Plaintiff because it conducted a threat investigation of Plaintiff after he sent a letter to the home of a federal judge.  In addition, some materials responsive to Plaintiff's request appear in records regarding an individual named Keith Maydak, who was a business associate of Plaintiff and who may have used Plaintiff's name as an alias. Plaintiff also brings claims for violation of the Privacy Act's prohibition on Defendant's disclosing information about Plaintiff to third parties and the Privacy Act's requirement that disclosures be accounted for.

All that remains live in this case is part of Count I, which seeks disclosure of records under the FOIA; Count III, which seeks damages under the Privacy Act based alleged disclosures of information about Plaintiff by Defendant to the Federal Bureau of Investigation (FBI); and Count VII, which seeks damages under the Privacy Act based on alleged disclosures of information about Plaintiff by Defendant to members of the public at a Plaintiff's news shop. *See* 1st Am. Compl. ¶¶ 5–12, 22–31, 83–99.   Defendant now moves for summary judgment on those remaining counts.   Def.'s 3d Renewed Mot. for Summ. J., ECF No. 104; *see* Def.'s Mem. in Supp. of 3d Renewed Mot. for Summ. J., ECF No. 104 [hereinafter Def.'s Mem.].   Plaintiff concedes Count I, opposes Defendant's motion as to Counts III and VII, and cross-moves for partial summary judgment on Count III.   Pl. Michael Sussman's Mot. for Partial Summ. J., ECF No. 105; *see* Pl. Michael Sussman's Mem. of L. in Supp. of his Mot. for Partial Summ. J., ECF No. 105 [hereinafter Pl.'s Opp'n & Mem.].[1]

## III.   Legal Standard.

A court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [summary] judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *see also* Fed.

---

[1] In his reply to Defendant's opposition to his motion for partial summary judgment, Plaintiff also repeats allegations from Count IV, which seeks damages based on alleged disclosures of information about Plaintiff by Defendant to the Commodities Futures Trading Commission.   Pl. Michael Sussman's Mem. of L. in Reply to Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J. at 5–7, ECF No. 108 [hereinafter Pl.'s Reply]; 1st Am. Compl. ¶¶ 32–48.   The Court has previously summarily adjudicated Count IV in favor of Defendant.   Mem. Op. at 9, ECF No. 33.   That adjudication has been upheld by the Court of Appeals.   *Sussman*, 494 F.3d at 1122 ("[S]ummary judgment was proper as to Count[] IV . . . .").   Those disclosures are therefore no longer at issue in this case and will not be revisited in this decision.   *See Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596–97 (D.C. Cir. 2001) (quoting *Briggs v. Penn. R.R. Co.*, 334 U.S. 304, 306 (1948)) ("Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'").

R. Civ. P. 56(c).  Only facts which, if disputed, "might affect the outcome of the suit under the governing law" prevent the court from granting summary judgment. *Anderson*, 477 U.S. at 248. Similarly, disputes over "irrelevant or unnecessary" facts should not be considered. *Id.*  A "genuine" issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant.  *See id*; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

When considering a motion for summary judgment, evidence presented by the non-movant is to be believed and all justifiable inferences are to be drawn in the nonmovant's favor. *See Anderson*, 477 U.S. at 255; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).  The nonmovant must provide more than mere allegations or denials, but instead must support his assertions with affidavits, declarations, or other competent evidence that set forth specific facts that show there is a genuine triable issue. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 417 U.S. 317, 324.  The nonmovant must provide evidence that would permit a reasonable fact-finder to find in his favor.  *See Arrington v. U.S.*, 473 F.3d 329, 333 (D.C. Cir. 2006).  If a nonmovant's allegations are "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.  The nonmovant must have more than a "scintilla of evidence in support of [his] position" to avoid summary judgment.  *Id.* at 252; *see also Freedman v. MCI Telecommc'ns Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001).

In accordance with the Local Civil Rules of this Court, a party moving for summary judgment must submit a "statement of material facts as to which the moving party contends there is no genuine issue."  D.D.C. LCvR 7(h)(1).  The nonmovant must provide a "separate concise statement of genuine issues setting forth all material facts" as to which the nonmovant contends litigation is necessary.  *Id.*  When considering a motion for summary judgment, the court may

consider the facts set forth in the moving party's statement of material facts to be admitted, unless controverted in the nonmovant's statement of genuine issues. *Id.*; *see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).

## IV.   Analysis.

As to Count I, Defendant claims to have released information previously withheld and Plaintiff concedes that the FOIA claims are no longer at issue. Defendant's motion for summary judgment will therefore be granted as to Count I.

As to Count III, Defendant argues that it is not required to account for disclosures made between the USMS and the FBI because they are one singular agency: the Department of Justice (DOJ). The Court finds that although the USMS and the FBI may be considered separate agencies under the Privacy Act for certain purposes, they may also be considered mere components of a singular agency—DOJ—for the purposes of intra-agency disclosures. Because there is a need-to-know exception to the prohibition on intra-agency disclosures and accounting requirements for such disclosures, Defendant's motion for summary judgment will be granted as to Count III and Plaintiff's cross-motion will be denied.

Finally, as to Count VII, Defendant may be held liable for improper disclosures made from records containing information about Plaintiff even if that information was maintained in the another person's records. Therefore, Defendant's motion will be denied as to Count VII.

### A.   Defendant's Motion Will Be Granted as to Count I.

An agency generally must disclose any records requested under FOIA unless an exemption or exclusion applies. *See* § 552. Plaintiff alleges in Count I of his amended complaint that Defendant violated that disclosure obligation by improperly withholding requested records relating to Plaintiff. 1st Am. Compl. ¶¶ 5–12. The Court recently summarily

adjudicated most of that count in favor of Defendant, but denied summary judgment in part after finding several improper withholdings of "redacted information [that] is reasonably segregable from that to which an exemption applies." *Sussman*, 734 F. Supp. 2d at 146–47. The Court directed Defendant to release that further segregable information to Plaintiff. *Id.*

Defendant claims to have released all further segregable information to Plaintiff in compliance with that order. Def.'s Mem. at 2–3; Def.'s Stmt. of Material Facts in Supp. of 2d Renewed Mot. for Summ. J. ¶ 3, ECF No. 104 [hereinafter Def.'s Facts]; 7th Supp. Decl. ¶¶ 3–4, ECF No. 104-1 [hereinafter 7th Bordley Decl.]. According to Plaintiff, these disclosures "satisfy Plaintiff's requests" such that "[t]he FOIA claims are no longer at issue." Pl.'s Opp'n & Mem. at 1 n.1. Plaintiff has therefore conceded that Defendant is entitled to summary judgment on Count I.

### B.    Defendant's Motion Will Be Granted as to Count III and Plaintiff's Cross-Motion Will Be Denied.

The Privacy Act prohibits agencies from disclosing a person's records to any other person or agency, with several exceptions. Even where an exception applies, however, an agency still must account for a permitted disclosure—except, among other situations, where the permitted disclosure is made to a person in the agency that maintains the record disclosed and that person has a need to know the information in the record. Plaintiff claims that the USMS made prohibited disclosures to the FBI and did not account for them. Although the USMS and FBI may themselves be considered agencies, they are also components of DOJ, which is itself an agency. It makes sense in this case to analyze whether Defendant made improper disclosures or failed to keep proper accounting of disclosures from the top-level perspective of DOJ, not the component-level perspective of the USMS. When analyzed from the perspective of DOJ, the alleged disclosures were permitted as intra-agency disclosures made on a need-to-know basis for

6

which the USMS was not required to keep an accounting.  The Court will therefore grant

Defendant's motion as to Count III and deny Plaintiff's cross-motion.

### 1.      The Privacy Act Generally Prohibits Agencies From Disclosing Records and Generally Requires Agencies to Account for Disclosures.

The Privacy Act broadly provides that "no agency shall disclose any record which is

contained in a system of records by any means of communication to any person, or to another

agency."  5 U.S.C. § 552a(b).  Such disclosures are permitted, however, "pursuant to a written

request by, or with the prior written consent of, the individual to whom the record pertains,"

§ 552a(b), or where any of 12 enumerated exceptions applies, § 552a(b)(1)–(12).  For all

disclosures, except those made under subsection (b)(1) or (2)—i.e., those made to "officers and

employees of the agency which maintains the record who have a need for the record in the

performance of their duties" (the  "intra-agency need-to-know disclosure exception") and those

made in response to a FOIA request, respectively—the agency making a disclosure must, *inter*

*alia*, "keep an accurate accounting of (A) the date, nature, and purpose of each disclosure . . . and

(B) the name and address of the person or agency to whom the disclosure is made," § 552a(c)(1),

and "retain [such] accounting . . . for at least five years or the life of the record, whichever is

longer, after the disclosure for which the accounting is made," § 552a(c)(2).  A Plaintiff may

pursue civil remedies for alleged violations of § 552a(c)(1)–(2), so long as the plaintiff suffers

some "adverse effect" as a result of the alleged violations.  § 552a(g)(1)(D).

### 2.      The USMS Disclosed Information About Plaintiff to the FBI.

Plaintiff alleges that Defendant violated § 552a(c)(1)–(2) by failing to keep and retain an

accurate accounting of all disclosures it made of Plaintiff's records.  1st Am. Compl. ¶¶ 22–31.

"The record . . . demonstrates that the Defendant has made at least one—and possibly more—

undocumented disclosures," Plaintiff says.  Pl.'s Opp'n & Mem. at 1.  The key disclosures:

communications between the USMS and FBI in October 2002.  Plaintiff asserts that "sometime

during the week of October 7, 2002" the USMS telephoned the FBI to implicate Plaintiff in

various financial crimes.  *Id.* at 4; Pl. Michael Sussman's Stmt. of Material Facts as to Which

There Is No Genuine Dispute ¶ 1, ECF No. 105-4 [hereinafter Pl.'s Facts].[2]  As evidence of that

communication, Plaintiff points to an email dated October 15, 2002 that was written by an

unidentified FBI source and sent to an unidentified recipient.  Pl.'s Opp'n & Mem. at 4; *see*

Email from [Redacted] to [Redacted] (Oct. 15, 2002, 12:40), ECF No. 105-1 [hereinafter FBI

Email].  That email provides, in relevant part:

> [L]ast week . . . [redacted] from the U.S. Marshals Service in Pittsburg contacted
> me to advise that the [redacted] of Michael Sussman, a businessman (kook) on
> Long Island, has been arrested.  They have all sorts of financial records that
> implicate Sussman in credit card fraud and, I believe other financial crimes.

FBI Email.  Plaintiff asserts that "this email shows that the USMS contacted the FBI, at its own

initiative, and divulged" Plaintiff's name, occupation, and address, as well as "the substance

of . . . Defendant's . . . investigative files on Plaintiff."  Pl.'s Opp'n & Mem. at 6.

    Nowhere does Defendant attempt to rebut the allegations that it made that disclosure to

the FBI.  *See* Def.'s Mem.; Def.'s Facts; 7th Bordley Decl.; Def.'s Combined (1) Reply in Supp.

of its 3d Renewed Mot. for Summ. J. and (2) Opp'n to Pl.'s Mot. for Summ J., ECF No. 106

[hereinafter Def.'s Reply & Opp'n]; Def.'s Reply in Supp. of its Stmt. of Material Facts in

Support of 2d Renewed Mot. for Summ. J., ECF No. 106 [hereinafter Def.'s Facts 2d].  There is

therefore no genuine issue as to the truth of material fact of that disclosure.

---

[2] In his statement of facts and response to Defendant's statement of facts, Plaintiff
mentions a disclosure in October 2005, not October 2002.  Pl.'s Facts ¶ 1; Pl. Michael Sussman's
Response to Def.'s Stmt. of Material Facts ¶ 2, ECF No. 105-5.  The email to which Plaintiff
refers in his facts, however, is dated October 15, 2002, *see* FBI Email, and the year discussed in
Plaintiff's memorandum in support of his motion is 2002, *see* Pl.'s Opp'n & Mem. at 5.  The
Court therefore presumes that Plaintiff means to refer to "2002" where he refers to "2005."

Rather, Defendant opines that Plaintiff "misunderstands the contours of the legal obligations regarding disclosures under the Privacy Act." Def.'s Reply & Opp'n at 3. The USMS and the FBI are "both part of the Department of Justice," and are therefore not separate agencies under the Privacy Act, says Defendant. *Id.*; *see also* Def.'s Facts 2d at 3 ("[T]he FBI is not a separate agency from the USMS under the Privacy Act . . . .") (internal citation omitted); 8th Supp. Decl. ¶¶ 4, 8, ECF No. 106-1 [hereinafter 8th Bordley Decl.]; Def.'s Supp. Mem. in Supp. of its 3d Renewed Mot. for Summ. J., ECF No. 113 [hereinafter Def.'s Supp. Mem.]. Defendant then asserts that the FBI had a "need to know" the information about Plaintiff disclosed to it by the USMS, which falls under the subsection (b)(1) exception to the Privacy Act's general disclosure prohibition, and which also falls under the subsection (c)(1) exception to the Privacy Act's accounting requirements. Def.'s Reply & Opp'n at 3; 8th Bordley Decl. ¶¶ 4–7. Plaintiff counters that the USMS and FBI are instead separate agencies, subject to all provisions of the Privacy Act including restrictions on disclosure and accounting. Pl.'s Reply at 2–4; Pl. Michael Sussman's Mem. of L. in Resp. to Court's July 21, 2011 Order, ECF No. 111 [hereinafter Pl.'s Supp. Mem.]. Both parties are partially right, and both parties are partially wrong: though the USMS and FBI may be considered separate agencies, they may also be considered a single agency for the purposes of the intra-agency need-to-know disclosure exception and corresponding exception from accounting requirements.

### 3. The USMS and FBI Are Separate Agencies but Are also a Single Agency with the Department of Justice.

The Privacy Act defines "agency" by reference to 5 U.S.C. § 552(e), the definition given in the FOIA. § 552a(a)(1). Since § 552a(a)(1) first incorporated § 552(e) by reference, § 552(e) has been moved to § 552(f). *See* Freedom of Information Reform Act of 1986, Pub. L. No. 99-

570, tit. I, subtit. N, § 1802(b), 100 Stat. 3207-48, 3207-49.[3]  Section 552(f) defines "agency"

first by reference to 5 U.S.C. § 551(1)—the definition given in the Administrative Procedure Act

(APA)—and second by noting that "agency" also "includes any executive department, military

department, Government corporation, Government controlled corporation, or other establishment

in the executive branch of the Government (including the Executive Office of the President), or

any independent regulatory agency."  § 552(f)(1).  The APA defines "agency" to mean "each

authority of the Government of the United States," § 551(1), with certain exceptions that are not

applicable in this case, *see* § 551(1)(A)–(H).  The APA definition further specifies that a U.S.

government authority is an agency regardless of "whether or not it is within or subject to review

by another agency."  § 551(1).  The Privacy Act thus incorporates the definition "agency" found

in both the FOIA and the APA.

        Defendant urges that the USMS and the FBI are components of one single agency—

DOJ—because, among the specifically enumerated sorts of agencies found in § 552(f)(1), the

USMS and FBI can only be considered part of an "executive department" and because

§ 552(f)(1) "does not designate constituent offices and bureaus as separate 'agencies.'"  Def.'s

Reply & Opp'n at 4; Def.'s Supp. Mem. at 2–3.  But, as Plaintiff rightly points out, that

interpretation wholly ignores the incorporation of § 551(1) by § 552(f)(1).  Pl.'s Reply at 3.  It

does not necessarily matter whether a component part of a parent agency is within or subject to

the review of an agency.  § 551(1); *see also Cloonan v. Holder*, 768 F. Supp. 2d 154, 162

(D.D.C. 2011) (quoting *Lair v. Dep't of Treasury*, No. 03-cv-827, 2005 WL 645228, at *3

(D.D.C. Mar. 21, 2005)) ("[N]aming components as defendants under the Privacy Act is

appropriate since the statute's plain language is clear that 'an agency need not be a cabinet-level

---

        [3] Although no conforming amendment has been made to the Privacy Act, the Court
interprets the reference to old § 552(e) to now refer to new § 552(f).  *Dong v. Smithsonian Inst.*,
125 F.3d 877, 878 n.1 (D.C. Cir. 1997).

agency such as the DOJ' to be liable."). What matters, then, is whether an agency component

operates with "substantial independent authority in the exercise of specific functions." *Soucie v.*

*David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971).[4]

The USMS exercises substantial independent authority to "provide for the personal

protection of Federal jurists, court officers, witnesses, and other threatened persons in the

interests of justice where criminal intimidation impedes on the functioning of the judicial process

or any other official proceeding." 28 U.S.C. § 566(e)(1)(A); *see also* 28 C.F.R. § 0.111(e);

*Overview of the U.S. Marshals Service*, USMS, http://www.usmarshals.gov/duties/factsheets/

general-2011.html (last visited August 31, 2011) (showing the USMS refer to itself as a

"federal . . . agency"). Thus, several courts have entertained actions under the Privacy Act or

FOIA against the USMS in its own name. *See, e.g.*, *Cloonan*, 768 F. Supp. 2d at 162 (quoting

§ 551(1)) ("The USMS . . . is undoubtedly an 'authority of the Government of the United

States'—and thus an agency under the [Privacy] Act."); *Saldana v. Fed. Bureau of Prisons*, 715

F. Supp. 2d 24 (D.D.C. 2010); *Boyd v. Criminal Div., DOJ*, No. 04-1100, 2005 WL 555412

(D.D.C. Mar. 9, 2005).

Similarly, the FBI has been vested with substantial independent authority to, *inter alia*,

investigate all federal crime not assigned exclusively to another federal agency, 28 U.S.C. § 533,

crimes involving government officers and employees, *id.* § 535, aircraft piracy, *id.* § 538,

---

[4] Defendant argues that reliance on *Soucie* is inappropriate because that case "was decided before the Privacy Act was enacted and dealt instead with FOIA, and not with any inter-or intra-agency sharing of information." Def.'s Supp. Mem. at 5 n.2. The Court disagrees. The text evaluated by *Soucie* was that of the APA, which is merely incorporated into the FOIA, just as it is merely incorporated into the Privacy Act. *Soucie*, 448 F.2d at 1073. In other words, the *Soucie* test for whether something is an "authority of the Government of the United States," § 551(1), has nothing to do with whether that authority has incurred document-production obligations under the FOIA as opposed to disclosure restrictions and accounting obligations under the Privacy Act (or, for that matter, whether that authority is engaged in "the process of rulemaking and adjudication" under the APA itself). *Soucie*, 448 F.2d at 1073.

felonious killings of state or local law enforcement officers, *id.* § 540, violent crimes against travelers, *id.* § 540A, and serial killings, *id.* § 540B; *see also Introduction to the FBI*, FBI, http://www.fbi.gov/stats-services/publications/facts-and-figures-2010-2011/introduction-to-the-fbi (last visited August 31, 2011) (discussing the FBI's investigative authority). Thus, several courts have explicitly concluded that the FBI is an agency under the *Soucie* test. *See, e.g.*, *Varona Pacheco v. FBI*, 456 F. Supp. 1024, 1027–28 (D.P.R. 1978); *Hamlin v. Kelley*, 433 F. Supp. 180, 181–82 (N.D. Ill. 1977). Moreover, the Court of Appeals for the District of Columbia Circuit has suggested that the FBI is an agency susceptible to suit under the FOIA, *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 173–74 (D.C. Cir. 1998), which would make it equally susceptible to suit under the Privacy Act. Not surprisingly, then, several courts have entertained actions under the Privacy Act or FOIA against the FBI in its own name. *See, e.g.*, *Alston v. Fed. Bureau of Investigation*, 747 F. Supp. 2d 28 (D.D.C. 2010); *Brown v. Fed. Bureau of Investigation*, 744 F. Supp. 2d 120 (D.D.C. 2010).

The Court therefore considers the USMS and FBI to possess sufficient independent authority to fall within the "agency" definition of the APA, and thus the FOIA, and thus the Privacy Act. However, the USMS and FBI are also components of DOJ. 28 U.S.C. § 531 ("The Federal Bureau of Investigation is in the Department of Justice"); *id.* § 561(a) ("There is hereby established a United States Marshals Service as a bureau within the Department of Justice . . . ."). DOJ, of course, is an executive department. *Id.* § 501 ("The Department of Justice is an executive department of the United States at the seat of Government."). The Privacy Act, through incorporation of definition of "agency" in the FOIA, specifically defines "agency" to include executive departments. §§ 551(1), 552(f)(1). The USMS and FBI thus appear to be

separate agencies while at the same time one agency: DOJ.  The Court must now reconcile this apparent contradiction.

### 4.    The Intra-Agency Need-to-Know Disclosure Exception Will Be Applied from the Perspective of DOJ, not the USMS.

Plaintiff urges the Court to focus on the conclusion that the USMS and FBI are separate agencies, to the exclusion of the conclusion that they are also one agency, by pointing to the text and structure of the Privacy Act, as well as guidance provided in 1975 by the Office of Management and Budget (OMB) on implementation of the then-new Privacy Act.  *See* Pl.'s Supp. Mem.  As to the text, Plaintiff notes that disclosures permitted by subsection (b)(1) may only be made "'to those officers and employees of the *agency which maintains the record . . . .*' There is no question that the *USMS*—not the FBI—maintains the records at issue in this case." *Id.* at 2 (quoting § 552a(b)(1)).  Therefore, says Plaintiff, disclosure by the USMS to the FBI cannot fall under the subsection (b)(1) exception.  But that analysis merely begs the question: Does DOJ not itself maintain the records at issue in this case?  Plaintiff recognizes this problem, answering that "one could argue that the 'parent' agency, DOJ, 'maintains' the record at issue because it in a sense administers the USMS," but contends that "the same cannot be said, however, of a 'sibling' agency such as FBI, which has no such administrative responsibility over USMS."  *Id.* at 2 n.1.  Plaintiff thus mischaracterizes the relationship between DOJ and the USMS and FBI.  From the perspective of the department level, DOJ, insofar as it maintains the USMS records at issue, does not disclose those records to the FBI as a separate agency that does not maintain such records; instead, DOJ discloses those records to *itself*, insofar as it maintains FBI records as well.

As to the structure of the Privacy Act, Plaintiff proffers that "the restrictions and responsibilities imposed by the Privacy Act are tailored to those 'agencies' that maintain

particular systems of records," and thus contends that "[b]ecause the USMS was the agency that maintained the records at issue and the FBI was not, only disclosures to USMS officers and employees could possibly fall under" the subsection (b)(1) disclosure exception. *Id.* at 3–4.  But that analysis simply disregards whether DOJ is itself an agency that maintained the records, such that disclosures nominally made to the FBI are actually intra-agency disclosures to itself.

Finally, Plaintiff points to guidance provided in 1975 by OMB to federal agencies on implementation of the then-new Privacy Act. *Id.* at 5–6 (citing Privacy Act Guidelines, 40 Fed. Reg. 28,949 (OMB July 1, 1975)).  That guidance directly addressed "[w]hether or not entities within an agency are to be considered agencies" under the Privacy Act, which "is particularly important in applying subsection (b)(1), in determining what constitutes an interagency transfer." Privacy Act Guidelines, 40 Fed. Reg. at 28,950.  Plaintiff seizes on part of a letter from the DOJ's Office of Legal Counsel (OLC), which OMB discussed in its guidance:

> [T]here should be a consistency between the practice under the Privacy Act and the practice for comparable purposes under the Freedom of Information Act.  For this reason it seems to us doubtful (though not entirely impossible) that a Department or other over-unit which has treated its components as separate agencies for all purposes under the Freedom of Information Act could successfully maintain that all of its components can be considered a single 'agency' under the Privacy Act, simply to facilitate the exchange of records.

Letter from Assistant Attorney General, OLC, DOJ, to OMB (Apr. 14, 1975) [hereinafter OLC Letter], *quoted in* Privacy Act Guidelines, 40 Fed. Reg. at 28,950, and Pl.'s Supp. Mem. at 5. "The USMS and FBI are separate agencies for every FOIA and Privacy Act purpose," Plaintiff says, because "they receive separate FOIA requests, are sued under the FOIA under their own names, maintain separate systems of Privacy Act 'records,' and . . . are each subject to the Privacy Act requirements and prohibitions based on the different systems of records they

maintain." Pl.'s Supp. Mem. at 5–6. But Plaintiff's quotation of the OLC letter is selective. Just before the portion Plaintiff quotes, OLC advises:

> [I]t may be desirable and in furtherance of the purposes of the [Privacy] Act to treat the various components of a Department as separate "agencies" for purposes of entertaining applications for access and ruling upon appeals from denials, while treating the Department as the "agency" for purposes of those provisions limiting intragovernmental exchange of records.

OLC Letter, *quoted in* Privacy Act Guidelines, 40 Fed. Reg. at 28,950. When read in totality, then, OLC's letter shows how one can reconcile the apparent conflict between finding that the USMS is an agency while also finding that DOJ is an agency: What matters when examining the subsection (b)(1) exception is whether it is desirable and serves the purposes of the Privacy Act to apply that exception from the perspective of DOJ as a whole or from the perspective of a component thereof.

In this case, it is desirable and serves the purposes of the Privacy Act to apply the subsection (b)(1) disclosure exception from the perspective of DOJ, not the USMS. Among its other responsibilities, the USMS conducts protection investigations of perceived threats to protectees, such as federal judges. 8th Bordley Decl. ¶ 6; *see* 28 U.S.C. § 566(e)(1)(A); 28 C.F.R. § 0.111(e). In conducting those investigations, the USMS "focuses on determining whether the suspect has the intent, motive, and ability to harm the protectee." *Id.* It does so through coordination with the FBI. 8th Bordley Decl. ¶ 6. Thus, for example, a "USMS Threat Investigator must notify the local FBI office of any receipt of an inappropriate communication related to a Marshals Service protectee," because "the FBI is responsible for investigating possible crimes," including those against protectees. *Id.* ¶¶ 6–7. Thereafter, "[i]f the FBI chooses to open a criminal investigation on the same case, the Threat Investigator will work jointly with the FBI agent" assigned to the case, and "[i]f FBI officials do not investigate, the

Threat Investigator will keep the FBI informed of the progress of the protective investigation."
*Id.* ¶ 6.

Defendant thus contends that "the overlap is obvious" between the USMS's and the
FBI's need to know the sort of information about a potential threat to a protectee that was
allegedly disclosed in this case. *Id.* ¶ 7; *see also* Def.'s Supp. Mem. at 7–8 ("[I]t is clear that the
FBI has a need to know information about the possible commission of crimes, just as it is also
clear that the USMS routinely and properly informs the FBI about possible criminal violations
the USMS has reason to believe occurred."). The Court agrees. In such a situation, the USMS
and FBI are not acting as independent agencies; instead, they are working together as mere
components of one overarching action of the DOJ. *See* 28 C.F.R. § 0.17 (recognizing the
existence of "areas of overlapping jurisdiction of the criminal investigative agencies" of DOJ,
which include the USMS and FBI). The purpose of the subsection (b)(1) exception is to allow
agency personnel to access records held by their agency that they need to discharge their duties.
*See* Privacy Act Guidelines, 40 Fed. Reg. at 28,954; S. Rep. No. 93-1183, at 66 (1974)
(reporting, on the bill that became the Privacy Act, that subsection (b)(1) "is included to prevent
the logistics involved in compliance with the subsection from impeding the day-to-day internal
operation of the agency"), *reprinted in* 1974 U.S.C.C.A.N. 6916, 6984. That purpose is well
served by viewing the records at issue from the perspective of DOJ as a whole, such that they
may be disclosed within DOJ as needed to investigate threats to protectees and the crimes those
threats may involve.

Plaintiff argues that instead of being intra-agency exchanges properly considered under
subsection (b)(1), "these are *inter*-agency exchanges" that should be considered under the
subsection (b)(7) law-enforcement exception. Pl.'s Supp. Mem. at 6. The Court disagrees.

Subsection (b)(7) permits disclosure of records from one agency "to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law," so long as "the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought." § 552a(b)(7). The distinction is important because disclosures must be accounted for if made under subsection (b)(7), but not if they are made under subsection (b)(1). *See* § 552a(c)(1).

Although at first glance subsection (b)(7), not (b)(1), might seem like the appropriate exception to apply—after all, the USMS and FBI are engaged in law-enforcement activities— closer examination shows that the purpose of the (b)(7) law-enforcement exception does not align with the situation in this case. Subsection (b)(7) is primarily designed for situations where law-enforcement agencies seek information protected by the Privacy Act from non-law-enforcement agencies, so as to the further the law-enforcement agency's goals during, say, an investigation. *See* S. Rep. No. 93-1183, at 69, 1974 U.S.C.C.A.N. at 6987 (recognizing that, as opposed to routine disclosures made under subsection (b)(3), "the less routine disclosure to a law enforcement agency involves a law enforcement agency request of a non-law enforcement agency" and reasoning that subsection (b)(7) exists to permit such "non-routine requests only where written requests and permission are given on a case-by-case basis by the agency maintaining the record"); *see, e.g.*, *United States v. Collins*, 596 F.2d 166, 169 (6th Cir. 1979) (holding that disclosure of suspected fraudulent Medicare cost reports by the Department of Health, Education, and Welfare to DOJ for investigation fell under the subsection (b)(7) exception). That purpose differs from the sharing of needed information among the USMS and

FBI when both are engaged in related law-enforcement activities under the singular auspices of

DOJ.

> The Court therefore concludes that in this case, the application of the subsection (b)(1)

exception should be made from the perspective of DOJ.  This conclusion is buttressed by a floor

statement given in the House of Representatives during debate of House version of what became

the Privacy Act, also quoted by OMB and Defendant:

> The present bill is intended to give 'agency' its broadest statutory meaning.  This
> will permit employees and officers of the agency which maintains the records to
> have access to such records if they have a need for them in the performance of
> their duties.  For example, within the Justice Department—which is an agency
> under the bill—transfer between divisions of the Department, the US. Attorney's
> offices, the Parole Board, and the Federal Bureau of Investigation would be on a
> need-for-the-record basis.  Transfer outside the Justice Department to other
> agencies would be more specifically regulated.

120 Cong. Rec. 36,967 (1974) (statement of Rep. Moorhead), *quoted in* Privacy Act Guidelines,

40 Fed. Reg. at 28,950, and Def.'s Supp. Mem. at 5.  This conclusion is further supported by

what little on-point caselaw exists.  *See, e.g.*, *Doe v. DOJ*, 660 F. Supp. 2d 31, 46 (D.D.C. 2009)

(approving need-to-know disclosures between a U.S. Attorney's Office and the Executive Office

for U.S. Attorneys, both of which are components of DOJ); *Roberts v. DOJ*, 366 F. Supp. 2d 13,

24 (D.D.C. 2005) (approving need-to-know disclosures between the FBI and DOJ's Office of the

Inspector General); *Lora v. DOJ*, No. 00-cv-3072, slip op. at 14–15 (D.D.C. Apr. 9, 2004)

(approving need-to-know disclosures between the Immigration and Naturalization Service,

which was then a DOJ component, and DOJ prosecutors because, considering the legislative

history of the Privacy Act, "disclosure to various divisions of large agencies is appropriate"),

*summarily aff'd*, No. 05-5147 (D.C. Cir. Mar. 7, 2006); *Walker v. Ashcroft*, No. 99-cv-2385, slip

op. at 18–20, 19 n.6 (D.D.C. Apt. 30, 2001) (approving need-to-know disclosures between the

FBI and DOJ prosecutors because "FBI employees and federal prosecutors are considered

employees of the same agency, namely, the Department of Justice"), *summarily aff'd*, No. 01-5222, 2002 U.S. App. LEXIS 2485 (D.C. Cir. Jan. 25, 2002).

        **5.**      **Conclusion.**

Disclosures made between the USMS and FBI therefore qualify as intra-agency disclosures and, as discussed above, those disclosures were made on a need-to-know basis. Accordingly, the alleged disclosures made by Defendant were permitted under § 552a(b)(1). As a result, Defendant did not need to keep an accounting of those disclosures. Defendant's motion will therefore be granted as to Count III and Plaintiff's cross-motion will be denied.

    **C.**    **Defendant's Motion Will Be Denied as to Count VII.**

The Privacy Act generally prohibits agencies from disclosing personal information to any person, including members of the public, regardless of whether that information comes from the person's own record or another person's record. Plaintiff alleges that Defendant made disclosures of information about him to members of the public at his place of business, which Defendant denies. Because a question exists as to the material fact of whether Defendant made the alleged disclosures, for which Defendant would be liable if they were made as alleged, Defendant is not entitled to summary judgment on Count VII.

        **1.**      **Defendant Allegedly Disclosed Information About Plaintiff to the Public.**

As discussed more fully above, the Privacy Act broadly provides that "no agency shall disclose any record which is contained in a system of records by any means of communication to any person." § 552a(b); *see* discussion *supra* Part IV.B.1. In Count VII, Plaintiff alleges that Defendant violated that disclosure prohibition sometime in 2002 by "yelling and screaming" "information the USMS collected pertaining to [Plaintiff's] financial transactions, employment history, business transactions, and other information from their files" to people at Chrissy's

News, which is allegedly one of Plaintiff's businesses.  1st Am. Compl. ¶¶ 84, 99; *see generally id.* ¶¶ 84–99.  Defendant admits that its agents visited Chrissy's News in December 2001, not sometime in 2002, "in an attempt to locate an execute an arrest warrant for Keith Maydak," not Plaintiff.  7th Bordley Decl. ¶ 6.  Defendant disputes that the alleged disclosure took place during that visit.  *Id.* ¶¶ 6, 12; Def.'s Facts ¶ 2 ("USMS made no disclosures . . . to non-governmental entities, other than to Plaintiff . . . .").

> ### 2.     The Privacy Act Prohibits Disclosure of Information About a Person Even if that Information Is Located Within Another Person's Record.

Plaintiff argues that the Chrissy's News disclosure was entirely inappropriate and was not accounted for.  Pl.'s Opp'n & Mem. at 7–8.  Defendant, however, argues that because the alleged disclosure predated the creation of a record about Plaintiff, Defendant cannot have improperly disclosed Plaintiff's record.  Def.'s Mem. at 3–4; 7th Bordley Decl. ¶¶ 7–8, 12.  If anything, Defendant disclosed information about Plaintiff from Mr. Maydak's record—a disclosure that Defendant claims is not actionable by Plaintiff.  Def.'s Mem. at 3–4; 7th Bordley Decl. ¶¶ 10–12.

In addition to general prohibition on disclosure of a person's record to someone else, the Privacy Act also gives a person the right to disclosure of records about that person.  *See* § 552a(d)(1).  Earlier in this litigation, the D.C. Circuit discussed that right, concluding that § 552a(d)(1) "give[s] parties access only to their own records, not to all information pertaining to them that happens to be contained in a system of records."  *Sussman*, 494 F.3d at 1121.  The Circuit relied on the text of the statute, OMB's 1975 guidelines, and common sense.  *Id.* at 1120–21.

Concerning the text, an agency's disclosure obligations under subsection (d)(1) are "triggered by an individual's request for either (1) 'his record' or (2) 'any information pertaining to him which is contained in the system [of records].'"  *Id.* at 1120 (quoting § 552a(d)(1))

(alteration in original).  However, "in either case the agency is required only to present 'the record,'" not the other information contained elsewhere in the system, to the requester.  *Id.* (quoting § 552a(d)(1)).  Thus, agencies "are right to exclude from mandatory disclosure those materials pertaining to a requesting individual but contained only in *other* individuals' files."  *Id.* The OMB guidelines are in accord: "If an individual is named in a record about someone else . . . and the agency only retrieves the portion pertaining to him by reference to the other person's name . . . , the agency is not required to grant him access" to that record.  Privacy Act Guidelines, 40 Fed. Reg. at 28,957, *quoted in Sussman*, 494 F.3d at 1120.  Finally, as a matter of common sense, "this seems the only reasonable interpretation, as the opposite approach would force agencies to search every last datum they maintain, in case it might pertain to the requesting party"—an "onerous task" that Congress is unlikely to have "imposed . . . upon federal agencies *sub silentio*."  *Sussman*, 494 F.3d at 1120–21; *accord* Privacy Act Guidelines, 40 Fed. Reg. at 28,957 ("Indeed, if this were not the case, it would be necessary to establish elaborate cross-references among records, thereby increasing the potential for privacy abuses.").

Defendant now argues that "the same analysis applies with respect to Plaintiff's claims under § 552a(b)."  Def.'s Mem. at 3.  In other words, Defendant urges the Court to conclude that because a plaintiff may not recover for an agency's refusal to disclose information about him to him that is located in someone else's records, a plaintiff also may not recover for an agency's disclosure of information about him to others from someone else's record.  The Court disagrees, because the text of the statute, OMB's guidance, and common sense dictate that the analysis of the right to disclosure under subsection (d)(1) is not the same as the analysis of the prohibition on disclosure under subsection (b).

21

Textually, while subsection (d)(1) permits a requester access only to "*his* record," subsection (b) prohibits disclosure of "*any* record."  § 552a(b), (d)(1) (emphases added).   Thus, the prohibition on disclosure is broader, not tied to the identity of the person to whom the record primarily pertains.  Common sense bears this out: unlike the *right* to disclosure, which would impose the onerous task recognized by the Court of Appeals if requesters enjoyed a right to access information about them in every record maintained by an agency, the *prohibition* on disclosure is necessarily broader, designed to protect personal information from disclosure regardless of the record in which it is held.  *See, e.g.*, *Sussman*, 494 F. Supp. at 1121 n.9 (recognizing that where the right to disclosure conflicts with the prohibition on disclosure, prohibition trumps).  The OMB guidance is in accord: "Nothing in the Privacy Act should be interpreted to authorize . . . disclosure of records, not otherwise permitted or required, to anyone other than the individual to whom a record pertains . . . ."  Privacy Act Guidelines, 40 Fed. Reg. at 28,953.  Therefore, an agency is not free to disclose information about a person simply because that information is held in the record of another person.

### 3.    Conclusion.

"Sussman has . . . put forward sufficient evidence to support a finding that the materials" allegedly disclosed to the public at Chrissy's News "were contained in a record, albeit potentially one pertaining primarily to Maydak or a judge."  *Sussman*, 494 F.3d at 1121.  Because such disclosure is prohibited even though made from someone else's record, Defendant is not entitled to summary judgment on Count VII.

## V.    Conclusion.

For the reasons discussed above, Defendant's motion for summary judgment will be granted in part as to Counts I and III but denied in part as to Count VII and Plaintiff's cross

motion for partial summary judgment will be denied.  All that will remain in this case is Count

VII.  The Court will order the parties to confer and propose a schedule for the resolution of that

count.  A separate order consistent with this memorandum opinion shall issue this date.


Date:  9/6/11                                                  /s/_____
                                                               HENRY H. KENNEDY, JR.
                                                               United States District Judge